TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SKYLER F. CHO (Cal. Bar No. 285299)
KEITH D. ELLISON (Cal. Bar No. 307070)
Assistant United States Attorneys
International Narcotics, Money
 Laundering, & Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2475/6920
     Facsimile: (213) 894-0141
     E-mail:    skyler.cho@usdoj.gov/
                keith.ellison2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>MURAD AIVAZIAN,<br><br>            Defendant. | No. CR 17-421-DMG-2<br><br>GOVERNMENT'S SENTENCING POSITION<br>FOR DEFENDANT MURAD AIVAZIAN<br><br>Hearing Date: January 25, 2022<br>Hearing Time: 3:00 p.m.<br>Location:     Courtroom of the Hon.<br>              Dolly M. Gee |

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Skyler F. Cho and

Keith D. Ellison, hereby files its sentencing position for defendant

Murad Aivazian.

///

///

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and such further evidence and argument as the Court may permit.

Dated: January 11, 2022          Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


          _____/s/_____
SKYLER F. CHO
KEITH D. ELLISON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

3      Defendant Murad Aivazian ("defendant") and his coconspirators
4  impersonated victim accountholders to defraud Citibank out of more
5  than $3 million.  After he was indicted for his conduct and released
6  on bond pending trial, defendant absconded to Mexico, where he
7  remained for more than two years.  He is now before the Court for
8  sentencing, having pleaded guilty to counts one and eight of the
9  Indictment charging him with Conspiracy to Commit Bank Fraud and
10  Aggravated Identity Theft, respectively.

11      The United States Probation and Pretrial Services Office
12  ("USPO") has filed a Presentence Investigation Report (Dkt. 118
13  ("PSR")) concluding that: (1) the total offense level for count one
14  is 26; (2) defendant falls within criminal history category I;
15  (3) the applicable Guidelines imprisonment range for count one is 63
16  to 78 months; and (4) the Guidelines range for count eight,
17  consistent with the statute (18 U.S.C. § 1028A(a)(1)), is two years'
18  imprisonment, which must run consecutive to any other term of
19  imprisonment.  (PSR ¶¶ 47, 54, 90.)  The government generally agrees
20  with the USPO's calculations, except for its application of a three-
21  point reduction for acceptance of responsibility.  Defendant is not
22  entitled to such a reduction because he obstructed justice.[1]

23      For the reasons set forth below, and in light of the sentencing
24  factors set forth in 18 U.S.C. § 3553(a)(1)-(2), the government
25  recommends that defendant be sentenced to a term of imprisonment of
26  111 months -- consisting of 87 months on count one to be followed by

27

28      [1] Without the three-point reduction, the Guidelines imprisonment
range for count one would be 87 to 108 months.

the mandatory consecutive two-year term on count eight -- and a five-year term of supervised release.  The government further recommends that defendant be ordered to pay the mandatory special assessment of $200 and restitution in the amount of $1,330,227.92.[2]

II.  **STATEMENT OF FACTS**

Defendant and his coconspirators impersonated victim accountholders to con Citibank customer service representatives into mailing checks to the victims' addresses or addresses the coconspirators provided.  (PSR ¶ 17.)  The coconspirators then intercepted or received the deliveries of the checks, including at their victims' homes, and used the stolen checks for their gain, causing Citibank a loss of more than $1 million.  (PSR ¶¶ 17, 25.)  In one instance, for example, defendant called Citibank and pretended to be victim H.S.  (PSR ¶ 19.)  Defendant provided H.S.'s personal information, including H.S.'s name, social security number, date of birth, mother's maiden name, and wife's name.  (Id.)  Defendant requested for checks to be sent to H.S.'s home with expedited delivery.  (Id.)  When the delivery person arrived with the checks a few days later, defendant again pretended to be H.S. and signed for the checks.  (PSR ¶ 20.)

In furtherance of the conspiracy, defendant and his coconspirators used the names of at least 66 Citibank accountholders and deposited at least 28 checks -- totaling $3,020,530 -- drawn against 13 different Citibank accounts.  (PSR ¶¶ 17, 24.)  Although

---

[2] At the time of sentencing, consistent with the plea agreement, the government will also move to dismiss the remaining counts of the Indictment as against defendant.

1  Citibank recovered a portion of the stolen monies, it suffered a loss
2  of at least $1,330,227.92.  (PSR ¶ 25.)

3      After his arrest on the Indictment, defendant was released on
4  bond pending trial in September 2017.  (PSR ¶ 11.)  In April 2019,
5  shortly before his May 2019 trial date, defendant fled to Mexico, in
6  violation of the terms of his release.  (PSR ¶ 12.)  The USPO learned
7  of defendant's absconding when the State Department reported that
8  defendant was in Mexico and trying to get a Mexican passport.
9  (PSR ¶ 13.)  But it appears he was unsuccessful, as defendant
10 ultimately returned to the United States in July 2021.  (PSR ¶ 12.)
11 While in Mexico, defendant trained to box, leading to nerve damage to
12 his right hand, and used cocaine daily.  (PSR ¶ 69, 71.)

13 **III.  THE PRESENTENCE REPORT**

14     The USPO calculated defendant's Sentencing Guidelines Offense
15 Level for count one as follows:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. §§ 2X1.1(a),<br>2B1.1(a)(1) |
| Loss Amount Exceeding<br>$1,500,000: | +16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| 10 or More Victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |
| More than $1,000,000 in Gross<br>Receipts from One or More<br>Financial Institutions: | +2 | U.S.S.G. § 2B1.1(b)(16)(A) |
| Obstruction of Justice: | +2 | U.S.S.G. § 3C1.1 |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level: | 26 | |

25 (PSR ¶¶ 29-47.)  The USPO calculated defendant's criminal history
26 score to be zero and within criminal history category I.  (PSR ¶ 65.)
27 The USPO calculated defendant's Guidelines imprisonment range for
28 count eight as two years, which, consistent with the statutory

3

1  mandate in 18 U.S.C. § 1028A, must run consecutive to any other term

2  of imprisonment.  (PSR ¶ 48.)  In its disclosed recommendation

3  letter, the USPO recommended that defendant be sentenced to a total

4  term of 87 months' imprisonment, to be followed by a five-year term

5  of supervised release, noting that defendant's "challenging personal

6  history" and minimal criminal history warranted mitigating

7  consideration.  (Dkt. 117 at 1-2, 7.)

8       The government objects to the USPO's calculation of defendant's

9  total offense level for count one and the resulting imprisonment

10 range insofar as they reflect a three-level reduction for acceptance

11 of responsibility pursuant to Section 3E1.1.  The application notes

12 to that section remark that conduct leading to an enhancement for

13 obstruction of justice under Section 3C1.1 "ordinarily indicates that

14 the defendant has not accepted responsibility for his criminal

15 conduct".  U.S.S.G. § 3E1.1, comment. (n.4).  While there are

16 "extraordinary cases" in which adjustments for both obstruction of

17 justice and acceptance of responsibility may apply, id., this is not

18 such a case.  In United States v. Thompson, 80 F.3d 368, 370-71

19 (9th Cir. 1996), the Court noted that a defendant's timely entry of a

20 plea and acknowledgment of wrongdoing after absconding were strong

21 evidence of her acceptance of responsibility, but not so strong as to

22 outweigh her failure to appear where she fled before sentencing and

23 was arrested a few months later.  The same is true here: defendant's

24 acceptance of responsibility is insufficient to overcome his flight

25 from prosecution, which exceeded two years.  And while defendant's

26 voluntary return may be a distinguishing factor, it does not outweigh

27 his obstruction of justice.  Defendant fled the country before

28 accepting responsibility, caused a multi-year delay in his case, and

appears to have returned only after unsuccessful attempts to obtain a Mexican passport and train as a boxer.  (PSR ¶¶ 13, 69.)  His voluntary return falls short of the "extraordinary" circumstances required for both obstruction of justice and acceptance of responsibility adjustments to apply.  U.S.S.G. § 3E1.1, comment. (n.4).  Accordingly, defendant's total offense level for count one is appropriately calculated as 29, resulting in a Guidelines imprisonment range of 87 to 108 months.

Moreover, even if he was entitled to a two-level reduction in offense level pursuant to Section 3E1.1(a), defendant would not be entitled to the additional one-level reduction under subsection (b) where his acceptance was not timely.  "In general, the conduct qualifying for a decrease in offense level under subsection (b)(1) or (2) will occur particularly early in the case."  U.S.S.G. § 3E1.1, comment. (n. 6).  Defendant's entry of a plea four years after his initial appearance, two of which were spent in Mexico evading justice, is neither timely nor deserving of an additional reduction.

## IV.  THE GOVERNMENT'S SENTENCING RECOMMENDATION

### A.   A Sentence of 111 Months' Imprisonment Is Appropriate to Accomplish the Purposes of Sentencing

The government recommends that the Court sentence defendant to a total term of 111-months' imprisonment -- consisting of the low-end Guidelines term of 87 months' imprisonment on count one and the mandatory minimum 24-month consecutive term of imprisonment on count eight.  The government believes such a sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Defendant and his coconspirators fraudulently stole more than $3 million from Citibank using the identities of at least 60 victims. In the process, they even went to some of those victims' homes. Identity theft is a reality that financial institutions and the public must face every day.  But it is not one that generally places victims at risk of coming face-to-face with the criminals attempting to exploit their information.  All of the parties involved here -- defendant, his coconspirators, and their victims alike -- are fortunate that the conduct did not escalate to physical confrontation and violence.  Moreover, the underlying conduct "involved numerous and repeated criminal acts over a period of time."  (Dkt. 117 at 6.) It was neither a one-time act nor an aberration.  Accordingly, the nature and circumstances of the offense warrant a custodial sentence.

And defendant's criminal conduct did not stop after his arrest. Instead, he chose to disregard the orders of the Court and flee to Mexico, where he remained for more than two years, attempted to get a Mexican passport, used cocaine, and trained to box.  His conduct interfered with the efficient administration of judicial proceedings and warrants no reduction for acceptance of responsibility and an enhancement for obstruction of justice.

For these same reasons, a lengthy custodial sentence is needed to (1) reflect the seriousness of the offenses and promote respect for the law, (2) protect the community, and (3) deter future criminal conduct from both defendant and others, without being greater punishment than necessary.  By sentencing him to a term of lengthy term of imprisonment, the Court will impress upon defendant the seriousness of his conduct and give him the time necessary to reconsider his actions in light of their substantial consequences.

1    In addition, 18 U.S.C. § 3553(a)(6) requires the Court to
2    minimize sentencing disparities among similarly-situated defendants.
3    One way for the Court to do so is to correctly calculate and
4    carefully review the applicable Guidelines range.  See Gall v. United
5    States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted
6    disparities was clearly considered by the Sentencing Commission when
7    setting the Guidelines ranges.").  Thus, pursuant to Section
8    3553(a)(6), by correctly calculating and carefully reviewing the
9    Guidelines range, the Court will avoid an unwarranted disparity with
10   similarly-situated defendants "with similar records who have been
11   found guilty of similar conduct" as defendant.  And a careful review
12   of the correctly calculated Guidelines range here warrants a within-
13   Guidelines sentence.

14   Defendant's history and characteristics do little to change the
15   analysis.  Though challenging circumstances may have led him to
16   relocate to the United States, (PSR ¶¶ 59-63), once here, defendant
17   appears to have done little to meaningfully contribute to society.
18   Rather than seek gainful employment (PSR ¶¶ 76-79), he engaged in
19   criminal conduct.  And when he was set to face trial for that very
20   conduct, he abandoned his mother and daughter and fled to Mexico.
21   Even if, as the USPO acknowledged, defendant's "challenging personal
22   history," minimal criminal history, (Dkt. 117 at 1-2, 7), and
23   voluntary return and surrender two years after absconding warrant
24   mitigating consideration, the sentence recommended by the government,
25   at the low end of the Guidelines range, reflects such circumstances.
26   Any further reduction is not warranted.

27

28

**B.    A Five-Year Term of Supervised Release is Appropriate**

In addition to a low-end term of imprisonment, for the reasons stated above, the government recommends that the Court impose a five-year term of supervised release.  The imposition of a term of supervised release is appropriate in this case to effectively protect the public from any future crimes of defendant.  A five-year term of supervised release would also provide rehabilitative benefits to defendant and assist him following his term of incarceration.

The USPO recommends as a condition of supervised release that the defendant be ordered to submit his person and property to a search by the USPO or law enforcement upon reasonable suspicion that defendant has violated a condition of his supervision.  (Dkt. 117 at 4.)  In light of the nature of his crimes and his demonstrated inability to comply with the orders of the Court, the government believes this condition is particularly appropriate and encourages the Court to adopt the recommendation.

**C.    Restitution**

Under 18 U.S.C. § 3663A, the Court shall order defendant to make restitution to the victims of his offenses.  In this case, the conduct of defendant and his coconspirators resulted in actual losses of $1,330,227.92 to Citibank.  (PSR ¶ 101.)  The government respectfully requests that the Court order restitution in that amount.

///

///

## V.    CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to a term of imprisonment of 111 months -- consisting of 87 months on count one to be followed by the mandatory consecutive two-year term on count eight -- to be followed by a five-year period of supervised release, a mandatory special assessment of $200, and restitution in the amount of $1,330,227.92.